# UNITED STATES BANKRUPTCY COURT
# MIDDLE DISTRICT OF ALABAMA

| In re | Case No. 24-10499-BPC |
|---|---|
| | Chapter 11 *(Jointly Administered)* |// 
| EBURY STREET CAPITAL, LLC, et al., | |
| Debtors.[1] | |

### MEMORANDUM OPINION AND ORDER GRANTING MOTION TO DISMISS

The Bankruptcy Administrator filed a Motion to Dismiss for cause pursuant to 11 U.S.C. § 1112(b). (Doc. 176) ("Motion"). Velocity Commercial Capital, the United States Department of Justice ("DOJ"), EYZC Investment Holdings, LLC ("EYZC"), and Emigrant Business Credit Corporation ("EBCC") joined in the Motion. The Court held an evidentiary hearing on November 21, 2024. For the reasons below, dismissal of these cases is warranted, and the Motion is due to be GRANTED.

## I.  JURISDICTION

This Court has jurisdiction to hear these matters pursuant to 28 U.S.C. § 1334(b). This is core proceeding within the meaning of 28 U.S.C. § 157(b)(2)(A). This is a final order.

## II.  FACTS

John A. Hanratty ("Hanratty") is the managing member of Ebury Street Capital, LLC and the related entities that are debtors before this Court (collectively "Debtors"). (Doc. 5). Hanratty testified as the managing member and last remaining employee of Debtors, but Hanratty is not a debtor. Hanratty is a party to criminal litigation in the Southern District of New York, as well as civil litigation in Texas, New York, and Puerto Rico. All of this litigation involves transactions related to certain Debtors.

---

[1] An Order entered in accordance with Rule 1015(b) of the Bankruptcy Rules directing the joint administration of the following cases: EB 1EMIALA, Ebury Street Capital, LLC, EB 2EMIALA, LLC, Ebury Fund 1, LP, Ebury Fund 2, LP, Red Clover 1, LLC, Ebury RE, LLC, Ebury 1EMI, LLC, Ebury 2EMI, LLC, EB 2EMIMD, LLC, EB 1EMINJ, LLC, EB 1 EMINY, LLC, EB 2EMINY, LLC, Ebury Fund 1 NJ, LLC, RE 1EMI, LLC, RE 2EMI, LLC, Greater Flamingo, LLC, with Ebury Street Capital, LLC, 24-10499 as the lead case. (Docs. 6, 67).

1

While the litigation against Hanratty is not within the confines of this Court's jurisdiction, questions regarding the interplay between the criminal litigation against Hanratty and the Debtors' operations quickly arose in these cases.

In the criminal litigation, Hanratty is subject to a Post-Indictment Restraining Order ("PIRO") issued by the District Court for the Southern District of New York on March 25, 2024. (Doc. 55). The PIRO specifically enjoined:

> [Hanratty] and all attorneys, agents, and employees, and anyone acting on the behalf of [Hanratty], and all persons or entities in active concert or participation with any of the above, and all persons or entities having actual knowledge of this [PIRO], shall not, directly or indirectly, transfer, sell, assign, pledge, hypothecate, encumber, or dispose of in any manner; cause to be transferred, sold, assigned, pledged, hypothecated, encumbered, disposed of in any manner; or take, or cause to be taken, any action that would have the effect of depreciating, damaging, or in any way diminishing the value of property or other interests belonging to, or owed to, or *controlled in whole or in part by [Hanratty]*, which property or other interests are subject to forfeiture. The property and other interests hereby restrained *include, but are not limited to*, the following:
> 
> a. Any and all assets held by Ebury Fund 1 and Ebury Fund 2, including municipal tax liens and real estate.

(Doc. 55) (emphasis added).

Debtors (including Ebury Fund 1 and Ebury Fund 2 specifically referenced in the PIRO) filed petitions for Chapter 11 relief on May 13, 2024. (Doc. 1). This Court granted Debtors' request for joint administration and entered its standard Operating Order. (Doc. 6, amended at Doc. 67; Doc. 20). The Operating Order outlines expectations and requirements put in place in the Middle District of Alabama for the efficient administration of Chapter 11 proceedings. Among other things, the Operating Order requires Debtors to maintain adequate insurance on property of the estate and to provide proof of insurance to the Bankruptcy Administrator within ten days of the petition date, which would have been May 23, 2024. (Doc. 20). As of the evidentiary

2

hearing, Debtors had not provided the Bankruptcy Administrator with proof of insurance on any property of Debtors' estates.² The Operating Order also requires Debtors to provide the Bankruptcy Administrator with all tax returns that were delinquent as of the petition date. (Doc. 20). This too was not provided. At the hearing, Hanratty testified that Debtors had not filed tax returns since 2021.

Back on May 24, 2024, this Court granted Debtors' "first day motions" with limitations. (Docs. 68, 69, 70). In an effort not to circumvent the PIRO issued by the District Court, this Court's orders limited the scope of Debtors' permissions and set forth that Debtors could utilize and perform the requested actions "upon authorization by the District Court." (Docs. 68, 69, 70).³

The bankruptcy cases continued with little to no progress toward rehabilitation or liquidation. Faced with procedural deficiencies from the start, Debtors made multiple requests for continuances and extensions citing difficulties due to the PIRO. The Court enlarged deadlines on multiple occasions, but documents and amendments only trickled in with deficiencies still in existence to date. (Docs. 38, 100, 106, 139, 176). The delays also resulted in the § 341 meeting of creditors being continued several times. (Doc. 246). Specifically, the initial § 341 meeting of creditors was set for June 24, 2024. (Doc. 51). After five continuances, the meeting concluded on October 28, 2024. (Doc. 246).

The day after the deadline to do so, Debtors filed a Motion to Extend Exclusivity Period. (Doc. 167). The Court set a hearing, addressed the two written objections to

---

² On the eve of the evidentiary hearing, Debtors filed a Motion for Relief from Operating Order Regarding Insurance (Doc. 250) and a Motion for Authority to Appoint Chief Restructuring Officer (Doc. 251), those motions will be addressed herein.

³ In open court, and in Debtors' Post-Hearing brief, Debtors lament the implementation of this Court's limited authorizations; however, no formal request for reconsideration was timely set forth. *See* Bankr. R. Fed. P. 9023. Despite Debtors' arguments at the hearing and statements in the Post-Hearing Brief, this Court declines to revisit those Orders in deciding the Motion. *See In re Domiano*, 442 B.R. 97, 110 (Bankr. M.D. Pa. 2010) ("Principles of judicial restraint dictate that if resolution of an issue effectively disposes of a case, we should resolve the case on that basis without reaching any other issues that might be presented.") (citing M*anning v. Upjohn Co.,* 862 F.2d 545, 547 (5th Cir. 1989)).

3

the motion as well as oral objections raised during the hearing. (Docs. 171, 172). The Court ultimately continued the hearing with instructions that a plan must be filed soon, or significant progress made, otherwise a show cause hearing would be scheduled sua sponte. (Doc. 178). No plan has been filed to date.

On October 7, 2024, nearly five months after the petitions were filed, the Bankruptcy Administrator moved to dismiss Debtors' cases for cause pursuant to 11 U.S.C. § 1112(b). (Doc. 176). Velocity Commercial Capital (Doc. 182), the DOJ (Doc. 222), EYZC (Doc. 237), and EBCC (Doc. 240) joined in the Motion. Debtors filed a response in opposition (Doc. 221), and an evidentiary hearing was scheduled for November 21, 2024.

Prior to the evidentiary hearing, Joint Stipulations regarding facts and conclusions of law were filed by Debtors and the Bankruptcy Administrator. (Doc. 246).[4] The Joint Stipulation outlines the series of deficiencies and delays by Debtors throughout these cases. Included in this history is that, in the six months since filing their petitions, Debtors did not file a single quarterly fee statement or pay any quarterly fees owed. (Doc. 246). Additionally, the parties stipulated to conclusions of law regarding numerous grounds for "cause" pursuant to 11 U.S.C. § 1112(b). (Doc. 246).

Counsel for Debtors, Hanratty, the Bankruptcy Administrator, and counsel for all joining creditors appeared at the hearing on November 21, 2024. The Bankruptcy Administrators and all creditors in appearance argued that "cause" existed for dismissal and that dismissal, rather than conversion or appointment of a Chapter 11 Trustee, was in the best interest of the creditors and the estate.

## III. LEGAL ANALYSIS AND CONCLUSIONS OF LAW

Pursuant to § 1112(b), the Court shall dismiss or convert a Chapter 11 case upon a finding of cause unless the Court determines that appointing a trustee under § 1104(a)

---

[4] Debtors and EYZC also filed a Joint Stipulation. (Doc. 248). Because that Joint Stipulation adopts and incorporates the same stipulations set forth in the one filed by the Bankruptcy Administrator and Debtors, the Court will refer to the first stipulation at Doc. 246.

4

is in the best interests of creditors and the estate. 11 U.S.C. § 1112(b); *In re Exigent Landscaping, LLC*, 656 B.R. 757, 773 (Bankr. E.D. Mich. 2024) ("Having found that cause exists to dismiss or convert this case under § 1112(b)(1), the Court must either dismiss or convert, unless one of three statutory exceptions applies."). As movant, the Bankruptcy Administrator must show by a preponderance of the evidence that cause exists to dismiss. *In re Bal Harbour Club, Inc.*, 316 F.3d 1192, 1195 (11th Cir. 2003); *In re Chris-Marine U.S.A., Inc.*, 262 B.R. 118, 124 (Bankr. M.D. Fla. 2001). Section 1112(b)(4) sets forth a non-exhaustive list for what establishes "cause." [5] *See* §1112(b)(4); *In re Woodruff*, 580 B.R. 291, 298 (Bankr. M.D. Ga. 2018) ("The circumstances indicating cause listed in § 1112(b)(4), however, are not exhaustive and a court may consider other factors in determining whether to convert or dismiss a Chapter 11 case."). Of the enumerated factors, the Bankruptcy Administrator relied on the following: (i) Debtors' failure to comply with orders of the Court, (ii) Debtors' unexcused failure to satisfy timely any filing or reporting requirement established by this title or by any rule applicable to a case under this chapter, (iii) Debtors' failure to pay any fees or charges required under chapter 123 of title 28, and (iv) Debtors' failure

---

[5] Section 1112(b)(4) sets forth that "cause" includes--
    (A) substantial or continuing loss to or diminution of the estate and the absence of a reasonable likelihood of rehabilitation;
    (B) gross mismanagement of the estate;
    (C) failure to maintain appropriate insurance that poses a risk to the estate or to the public;
    (D) unauthorized use of cash collateral substantially harmful to 1 or more creditors;
    (E) failure to comply with an order of the court;
    (F) unexcused failure to satisfy timely any filing or reporting requirement established by this title or by any rule applicable to a case under this chapter;
    (G) failure to attend the meeting of creditors convened under section 341(a) or an examination ordered under rule 2004 of the Federal Rules of Bankruptcy Procedure without good cause shown by the debtor;
    (H) failure timely to provide information or attend meetings reasonably requested by the United States trustee (or the bankruptcy administrator, if any);
    (I) failure timely to pay taxes owed after the date of the order for relief or to file tax returns due after the date of the order for relief;
    (J) failure to file a disclosure statement, or to file or confirm a plan, within the time fixed by this title or by order of the court;
    (K) failure to pay any fees or charges required under chapter 123 of title 28[.]

to maintain appropriate insurance that poses a risk to the estate or to the public. (Doc. 176).

In an attempt to cure some of the outstanding issues and deficiencies, Debtors filed a Motion for Relief from Operating Order Regarding Insurance the day before the evidentiary hearing. (Doc. 250). Under the Operating Order, the deadline for Debtors to provide proof of insurance expired on May 23, 2024. (Doc. 20). Hanratty offered some testimony in court about why obtaining insurance was difficult or unaffordable, and the Court recognizes the difficulties and expenses of obtaining insurance in some cases. Yet Debtors' request for relief from the insurance requirements of the Operating Order nearly six months after the expiration of the deadline to provide insurance is too little, too late.

In all Chapter 11 cases, there are reporting requirements and fees owed. The Operating Order, together with 11 U.S.C §§ 704(a)(8), 1106(a)(1), 1107(a) and Fed. Rule of Bankr. P. 2015, requires the debtor to file monthly operating reports. (Doc. 20). Monthly operating reports are due on the twenty-first day of each month. (Doc. 176). It is undisputed that Debtors did not timely comply with the reporting requirements. (Doc. 246). Nor did Debtors filed any quarterly fee statements or pay any quarterly fees owed in these cases. *Id*.

The Court's analysis need not go further because, at a minimum, "cause" exists in these cases. It is undisputed that Debtors did not timely provide information requested by the Bankruptcy Administrator, comply with orders of this Court, pay required quarterly fees, maintain insurance, or timely comply with reporting requirements. *In re Brown*, 55 F.4th 945 (1st Cir. 2022), *cert. denied sub nom. Brown v. Harrington*, 143 S. Ct. 2435, 216 L. Ed. 2d 417 (2023) (affirming the bankruptcy court's dismissal of a Chapter 11 case based on the debtor's failure to pay required fees and submit reports)*; In re McKenna*, 580 B.R. 1, 10 (Bankr. D.R.I. 2017) ("Although multiple grounds may exist, one ground . . . is sufficient standing alone, to establish

6

Case 24-10499   Doc 269   Filed 12/17/24   Entered 12/17/24 16:04:52   Desc Main
Document    Page 6 of 11

cause under the statute.") (citations omitted); *In re Hoover*, 828 F.3d 5, 9 (1st Cir. 2016) ("one cause is enough").

With "cause" established here, the Court must next determine whether conversion or dismissal is in the best interests of creditors and the estate. *See* 11 U.S.C. § 1112(b)(1) ("the court *shall* convert . . . or dismiss a case, whichever is in the best interest of creditors and the estate.") (emphasis added). "There is no bright line test to determine whether conversion or dismissal is in the best interest of creditors and the estate. The decision is left to the Court's discretion." *In re Ozcelebi*, 639 B.R. 365, 425 (Bankr. S.D. Tex. 2022). Section 1112(b) also includes the alternative of appointing a trustee or an examiner under § 1104(a). As a preliminary matter, the Court does not find that appointment of a trustee or examiner would be in the best interest of the estate or creditors here. First, no party requested the appointment of a trustee under § 1104. Nor is there any clear and convincing evidence before this Court that any benefits from the appointment of a trustee or examiner would outweigh the cost of the appointment. *See In re Ionosphere Clubs, Inc.*, 113 B.R. 164, 168 (Bankr. S.D.N.Y. 1990).

In weighing whether dismissal or conversion is in the best interest of creditors and the estate, courts look to numerous factors. The Bankruptcy Administrator relied on the ten-factor test below which she contends supports dismissal rather than conversion:

> 1. Whether some creditors received preferential payments, and whether equality of distribution would be better served by conversion rather than dismissal.
> 2. Whether there would be a loss of rights granted in the case if it were dismissed rather than converted.
> 3. Whether the debtor would simply file a further case upon dismissal.
> 4. The ability of the trustee in a chapter 7 case to reach assets for the benefit of creditors.
> 5. In assessing the interest of the estate, whether conversion or dismissal of the estate would maximize the estate's value as an economic enterprise.
> 6. Whether any remaining issues would be better resolved outside the bankruptcy forum.

7

> 7. Whether the estate consists of a "single asset."
> 8. Whether the debtor had engaged in misconduct and whether creditors are in need of a chapter 7 case to protect their interests.
> 9. Whether a plan has been confirmed and whether any property remains in the estate to be administered.
> 10. Whether the appointment of a trustee is desirable to supervise the estate and address possible environmental and safety concerns.

*In re BH S & B Holdings, LLC*, 439 B.R. 342, 346-47 (Bankr. S.D.N.Y. 2010). Here, the Bankruptcy Administrator seeks dismissal and none of the other parties argue that the best interests of creditors would be better served by conversion. Thus, this Court will briefly address the factors that support dismissal over conversion.

As to the first factor, the Bankruptcy Administrator argued that Debtors' Schedules indicate that there were preferential payments made. (Doc. 176). This Court has concerns about what the Schedules are not showing given Debtors' admission that inaccuracies remain in their Schedules and further amendments are needed six months after filing the petitions. The record and Hanratty's testimony paint a grim picture for Debtors—no proof of insurance, no tax returns since 2021, restricted access to funds, furloughed employees, and no ongoing operations. While the Court has been patient due the obvious complexity of this case, Debtors cannot continue to linger in Chapter 11 while Hanratty waits out his criminal litigation in New York. *See In re BH S & B Holdings, LLC*, 439 B.R. at 351 ("While the complexity and nature of the case often dictates its pace, it is equally clear that a debtor cannot wallow in chapter 11.") (citations omitted).

Next, it is unclear whether Debtors would immediately refile. This Court would note that, given the delays and deficiencies here, future filings may experience less leniency than has been granted here. Debtors do not deny that the Schedules are inaccurate and remain in need of further amendments, and Hanratty's testimony did not divulge critical details about the location and value of Debtors' assets. As to a trustee's ability to reach assets, it is unclear to this Court, even at this point, what assets exist,

8

where the assets are located, and whether there is any equity in Debtors' assets to potentially benefit unsecured creditors. Too often, Hanratty summarily stated that the valuation process was too "granular" to provide much detail. A case of this complexity cannot move forward on granular data alone—the Bankruptcy Code and this Court require accuracy in disclosures in exchange for the relief provided.

As an alternative to dismissal, Debtors moved to appoint a Chief Restructuring Officer on the eve of the evidentiary hearing. (Doc. 251). Given the delays, delinquencies, the lack of employees, and lack of access to accounts, the Court is not persuaded that a Chief Restructuring Officer would be effective or affordable here. Debtors did not explain how such a professional would be compensated. Based on the timing and the lack of details as to the employment of a Chief Restructuring Officer, the Court does not view this proposal as a genuine path forward. Debtor's eleventh-hour request to appoint a Chief Restructuring Officer is not enough to overcome the numerous factors that support dismissal.

The factor that most supports dismissal is that there are remaining issues that would be best resolved outside of bankruptcy. Hanratty faces litigation, both civil and criminal, that hampers his ability to effectively progress Debtors through these Chapter 11 cases. The PIRO has undoubtedly hindered Debtors since the petition date. Debtors contend that efforts to work with the DOJ to access additional funds to assist with these cases would have been unproductive. Yet this Court and the DOJ did permit Debtors access to funds to pay employees early in the cases. (Doc. 147). While the Court understands the PIRO restricted Debtors in many ways, the Court is not convinced Debtors diligently worked with the DOJ to release additional funds that could have been used by Debtors to move these cases forward. The Court is aware of the recent order from the District Court for the Southern District of New York in which that court reserved its ruling on vacatur of the PIRO pending a hearing pursuant to *United States v. Monsanto*, 491 U.S. 600 (1989). (Doc. 266). While the Court recognizes the limitations faced by Debtors because of the PIRO, this Court cannot ignore the litany

9

of deficiencies in these cases that have no definitive date of resolution. Moreover, based on the frustrations voiced by the Bankruptcy Administrator and creditors regarding Debtors' lack of transparency and lacking disclosures, this Court finds it is unlikely that, without relief from the PIRO, a Chapter 7 Trustee would have greater access to information or assets needed to maximize the estates' value if these cases were converted.

While Debtors faced difficulties, there is not enough here to overcome the grounds supporting dismissal. *See In re McKenna*, 580 B.R. at 10 (outlining that once cause for dismissal is established the burden shifts to the debtor to demonstrate an exception to dismissal under § 1112(b)(2)). Debtors did not establish a reasonable likelihood that a plan will be confirmed within a reasonable period of time. A plan has not been filed to date, and Debtors acknowledge that liquidation is their only path forward. Nor did Debtors establish that their deficiencies and omissions in Schedules, reports, and fees will be cured within a reasonable period of time. In their Post-Hearing Brief, Debtors argue that "substantial leeway must be given for the opportunity to allow the Debtors an organized process that maximizes the return to all creditors." (Doc. 261). The record supports that, given the unique facts of these cases, leeway was provided on numerous occasions. Notably, the Bankruptcy Administrator continued the meeting of creditors five times, but even after the final setting, it was admitted that Schedules still require amendments because of inaccuracies. The Court also extended deadlines several times. (Docs. 38, 100, 106, 238). Debtors also argue that there is a lack of urgency here because the Bankruptcy Administrator and creditors waited five months before seeking dismissal. *Id.* The Court does not find this argument persuasive. Instead, it views any perceived delay by the Bankruptcy Administrator in seeking dismissal as her attempt work with Debtors and provide them with every opportunity to rehabilitate.

In his closing argument, Counsel for Debtors even stated that, as long as the PIRO remains in effect, "a trustee is not going to do anything. It's not going to get

10

anywhere on a conversion. That's not going to be helpful. This ought to be dismissed." (Doc. 259, p. 179). While Counsel for Debtors concluded he didn't believe dismissal was in the best interests of creditors, the Court cannot ignore that all creditors in appearance at the evidentiary hearing supported dismissal over conversion. The Court finds that the Bankruptcy Administrator met her burden, and dismissal is in the best interests of the estate and creditors here.

## IV. CONCLUSION

For the reasons stated above, the Bankruptcy Administrator's Motion to Dismiss is GRANTED, and these Chapter 11 cases are DISMISSED without prejudice.[6]

Done this 17th day of December, 2024.

Bess M. Parrish Creswell
United States Bankruptcy Judge

c: Debtors
Richard Scott Williams, Attorney for Debtors
Frederick D. Clarke, Attorney for Debtors
Julie Potts, Attorney for Debtors
Bankruptcy Administrator
All Creditors

---

[6] Debtors' Motions seeking relief from the Operating Order and requesting the appointment of a Chief Restructuring Officer are mooted by the dismissal.

11